UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MICHAEL MELENDEZ,

                Plaintiff,

-vs-                    **No. 6:12-CV-6226(MAT)**
                               **DECISION AND ORDER**

COSTELLO; P. FOLEY; KARLSTROM;
RANKIN; KENNEALLY; P. GREIS; JOSEPH
TAN; SAMUELSON,

                DefendantS.

---

**I. Introduction**

Pro se plaintiff Michael Melendez ("Plaintiff"), an inmate in custody of the New York State Department of Corrections and Community ("DOCCS") at Collins Correctional Facility ("Collins"), instituted this action pursuant to 42 U.S.C. § 1983 against Correction Sergeant Costello ("Sgt. Costello"); Correction Sergeant P. Foley ("Sgt. Foley"); Correction Officer Karlstrom ("C.O. Karlstrom"); Correction Officer Rankin ("C.O. Rankin"); Lieutenant Kenneally ("Lt. Kenneally"); Deputy Superintendent P. Greis ("D.S. Greis"); Dr. Tan; and Nurse Administrator Samuelson ("N.A. Samuelson").

**II. Factual Background and Procedural History**

Plaintiff's allegations cover disparate incidents and will be discussed in more detail in the "Discussion" section of this Decision and Order. Plaintiff generally alleges that Sgt. Costello, Sgt. Foley, C.O. Karlstrom, C.O. Rankin, Lt. Kenneally, and D.S. Greis filed false misbehavior reports against him in

retaliation for his filing of grievances and a civil rights complaint against individuals employed at Attica Correctional Facility. He also asserts that Dr. Tan was deliberately indifferent to Plaintiff's serious medical needs (eczema), and N.A. Samuelson is liable in a supervisory capacity for Dr. Tan's deliberate indifference.

Defendants have filed a motion to dismiss (Dkt #9) asserting that Plaintiff's allegations fail to state any claims upon which relief may be granted. Plaintiff, in response to the motion to dismiss, filed a motion to amend (Dkt #15) attaching a proposed amended complaint, purporting to cure the pleading deficiencies identified by Defendants in the original complaint. Defendants filed a brief (Dkt #17) opposing Plaintiff's motion to amend.

This matter was transferred to the undersigned on October 15, 2013 (Dkt #18). In evaluating Defendants' motion to dismiss, the Court has considered the allegations in Plaintiff's proposed amended complaint (Dkt #15). For the reasons that follow, the Court finds that Plaintiff's amended pleading does not cure the deficiencies identified in Defendants' motion to dismiss. Accordingly, although Plaintiff's motion to amend is granted, Defendants' motion to dismiss is granted, and the amended complaint is dismissed with prejudice.

**III. General Legal Principles**

**A. Motions to Dismiss for Failure to State a Claim**

Rule 12(b)(6) allows dismissal of complaints based upon the plaintiff's failure "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In order "[t]o survive a motion to dismiss under [Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007)). In assessing a claim's plausibility, the district court must "assume [the] veracity" of all well-pleaded factual allegations contained in the complaint, Iqbal, 129 S. Ct. at 1950, and draw every reasonable inference in favor of the plaintiff, Zinermon v. Burch, 494 U.S. 113, 118 (1990). However, the plaintiff's allegations must consist of more than mere labels or a "formulaic recitation of the elements of a cause of action," and bare legal conclusions are "not entitled to the assumption of truth." Iqbal, 129 S. Ct. at 1949–50.

**B. Construction of Pro Se Pleadings**

The Supreme Court has noted that "[a] document filed pro se is to be liberally construed,' and must be held to less stringent standards than formal pleadings drafted by lawyers.'" Erickson v.Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429

U.S. 97, 106 (1976)); see also Bertin v. United States, 478 F.3d 489, 491 (2d Cir. 2007). Because Plaintiff is acting pro se, the Court will construe his submissions liberally, "to raise the strongest arguments they suggest." Bertin, 478 F.3d at 489.

**III. Discussion**

**A.   Retaliatory Filing of False Misbehavior Reports**

It is well settled that "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997) (citing Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). The inmate must allege additional unlawful conduct by the defendant, "such as retaliation against the prisoner for exercising a constitutional right." Id. (citing Franco v. Kelly, 854 F.2d 584, 588-90 (2d Cir. 1990)). It bears noting that the Second Circuit has cautioned district courts to approach retaliation claims asserted by prisoners "with skepticism and particular care," since "virtually any adverse action taken against a prisoner by a prison official-even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act." Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)).

In order to state a valid retaliation claim, a plaintiff must allege that his actions were protected by the Constitution and were

-4-

"a substantial or motivating factor for the adverse actions taken by prison officials." Bennett v. Goord, 343 F.3d 133, 137 (2d Cir. 2003) (citations omitted). Thus, there must be a "causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (citation omitted). Conclusory allegations cannot form the basis of a retaliation claim; rather, the prisoner must provide "specific and detailed factual allegations." Friedl v. City of New York, 210 F.3d 79, 85-86 (2d Cir. 2000) (quotation omitted).

### 1. Protected Conduct

Plaintiff alleges that he filed informal grievances against Collins' employees Sgt. Costello and Lt. Keneally in August 2008, and a lawsuit against officials at Attica. Defendants have not disputed that Plaintiff has set forth facts that, if proven, would satisfy the first prong of the retaliation standard, i.e., that he engaged in protected conduct when he filed grievances against two named defendants and a prior lawsuit against correction officers at Attica. A prisoner's filing of a grievance against a correction officer is protected by the First Amendment, and retaliation in response to such a grievance is an actionable claim. E.g., Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996). Similarly, the filing of a lawsuit is a constitutionally protected activity. Bounds v. Smith, 430 U.S. 817, 821-32 (1977).

### 2. Adverse Actions

To plead adequately that an adverse action was taken against him, an inmate must allege that he was subjected to "conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Dawes, 239 F.3d at 493. Plaintiff alleges that on June 1, 2009, he was returning from a program when he was approached by Sgt. Costello who, without explanation, placed him into mechanical restraints and drove him in a facility vehicle to the infirmary. After placing him in an isolation cell, Sgt. Costello began questioning him about his pending civil rights complaint about officials at Attica. When Plaintiff refused to discuss the lawsuit, Sgt. Costello "became hostile, stating that Plaintiff ha[d] angered officials at Collins because Plaintiff is suing friends of Defendant Foley." Amended Complaint ("A.C."), ¶ 17. According to Plaintiff, Costello indicated that because of the Attica lawsuit, Plaintiff was being placed in the Special Housing Unit ("SHU").

Plaintiff further alleges that on the following day, June 2, 2009, he was served with a misbehavior report falsely charging him with possession of contraband based upon an allegation that during a search of his assigned cubicle area, an alcoholic substance was found. A.C., ¶ 18. After a tier hearing, Plaintiff was found guilty of the charge. The punishment imposed was 50 days in SHU and 45 days recommended loss of good time credit. Id., ¶ 24.

The Court finds that Plaintiff has adequately stated facts to comply with the second prong of the retaliation test. If true, Plaintiff's allegations regarding Defendants' issuance of the misbehavior report that resulted in his allegedly wrongful confinement and recommended loss of good time credits sufficiently describe adverse conduct that would "chill" a reasonable inmate from exercising his constitutional rights. See Baskerville v. Blot, 224 F. Supp.2d 723, 732 (S.D.N.Y. 2002) ("[Inmate's] allegations regarding [correction officers'] actions in issuing the misbehavior report and restraint order that resulted in his wrongful confinement and restrictions of his privileges, sufficiently describe adverse conduct that would 'chill' a reasonable inmate from exercising his constitutional rights.") (citing Dawes, 239 F.3d at 493; Wells v. Wade, No. 96 Civ. 1627, 2000 WL 1239085, at *3-4 (S.D.N.Y. Aug. 31, 2000) (filing of misbehavior report resulting in keeplock confinement is an adverse act likely to deter inmate from engaging in activity protected by the First Amendment).

### 3. Causal Connection

Adverse actions alone, however, are insufficient to establish retaliation in the absence of facts supporting an inference of a causal connection between the adverse actions and the protected conduct. See Dawes, 239 F.3d at 492. "The causal connection must be sufficient to support the inference 'that the speech played a substantial part in the [defendant]'s adverse . . . action.'"

Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000) (quoting Ezekwo v. NYC Health & Hospitals Corp., 940 F.2d 775, 780-81 (2d Cir. 1991)). In determining whether a causal connection exists between the inmate's protected activity and the prison official's actions, a number of factors may be considered, including the temporal proximity between the protected activity and the alleged retaliatory act, the inmate's vindication at a hearing on the matter, any statements made by the defendant attesting to a retaliatory motive, and the inmate's clean disciplinary history. See Colon v. Coughlin, 58 F.3d 865, 872–73 (2d Cir. 1995).

The Court agrees with Defendants' contention that Plaintiff has not sufficiently alleged a causal connection between his protected conduct and Defendants' adverse acts. In particular, the instances of protected conduct and the adverse actions are far too remote to support a finding of causation based on temporal proximity. The grievances against the Collins' defendants named in this lawsuit (Lt. Kenneally and Sgt. Costello) were filed in August 2008, approximately a year prior to the allegedly false misbehavior report. Plaintiff's lawsuit concerning the Attica officials who are allegedly friends with Sgt. Foley was filed in April 2006, more than three years before the June 2009 misbehavior report. Furthermore, the disciplinary hearing was upheld on appeal, so Plaintiff cannot show that he was vindicated of the charges. Plaintiff does allege that he had only one Tier II misbehavior

report in approximately the past 10 years. A.C., ¶ 25. Given the remoteness between the protected conduct and the adverse actions, and the fact that one instance of protected conduct (the Attica lawsuit) does not even involve the individuals who committed the adverse actions at issue here, Plaintiff's allegations have not "nudged [his] claims" "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**B. Inadequate Employee Legal Assistance**

Plaintiff asserts that C.O. Rankin was assigned to assist him in connection with the disciplinary hearing stemming from the June 2009 misbehavior report. According to Plaintiff, C.O. Rankin failed to secure documentary evidence requested by Plaintiff, claiming that such documents were unavailable. The Second Circuit has held that prison authorities have a constitutional obligation to provide "substantive assistance" to an inmate in marshaling evidence and presenting a defense. Eng v. Coughlin, 858 F.2d 889, 897 (2d Cir. 1988). Even assuming that C.O. Rankin did not obtain documents that were available, Plaintiff cannot show that he was prejudiced, given his admission that he eventually obtained the documents. A.C., ¶ 15.

Based on Plaintiff's analysis of the handwriting on an assistance form and the alcohol verification memorandum, he believes that C.O. Rankin penned the alcohol verification memorandum, a necessary supporting document to the misbehavior

report charging him with having an alcoholic substance in his cell. See A.C., ¶ 23. According to Plaintiff, he has demonstrated that the charging official, Sgt. Foley, did not write the memorandum and that it was written after the fact by C.O. Rankin, in violation of certain "procedural rules". Id. As an initial matter, this claim appears to be based solely on speculation. Moreover, Plaintiff has alleged–at most–a violation of state or administrative rules or procedures, which do not set forth an actionable § 1983 claim. E.g., Rahman v. AMKC Warden, No. 10 Civ. 4402(BMC), 2010 WL 4025614, at *2 n.1 (E.D.N.Y. Oct. 13, 2010) ("To the extent that plaintiff alleges that the Rikers Island facility failed to follow state law or New York City Department of Correction policies regarding intake and housing of inmates, such a claim does not allege a violation of his right to due process cognizable under § 1983.") (citing Davis v. Scherer, 468 U.S. 183, 195 (1984) (an official's violation of a state statute or regulation does not, by itself, make the official liable under § 1983); Pollnow v. Glennon, 757 F.2d 496, 501 (2d Cir. 1985)).

    **C.    Constitutional Violations at Disciplinary Hearing**

Plaintiff asserts that D.S. Greis (1) denied him documents at the disciplinary hearing concerning the June 2009 misbehavior ticket and (2) "ridiculed Plaintiff and express disbelief that Plaintff had questioned Defendant Foley's credibility." A.C., ¶ 24. With regard to the alleged withholding of documents, Plaintiff

admits that these documents were eventually produced to him, and thus he has failed allege any injury. With regard to the allegation that he was verbally berated by Greis, this does not state a cognizable constitutional claim. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) ("The claim that a prison guard called [the plaintiff-inmate] names also did not allege any appreciable injury and was properly dismissed.").

Even if Plaintiff's allegations, broadly construed, could be read suggest a denial of procedural due process, they cannot withstand Defendants' motion to dismiss. To assert a due process claim based upon a constitutional inadequate disciplinary hearing, Plaintiff must allege that he had a liberty interest in remaining free from the penalties imposed as a result of the hearing. See Wolff v. McDonnell, 418 U.S. 539 (1974). Here, Plaintiff was sentenced to 50 days in SHU, and 45 days recommended loss of good time credits. The Second Circuit has held that 101 days of disciplinary confinement in SHU was not a sufficiently atypical and significant hardship under Sandin v. Conner, 515 U.S. 472 (1995), to warrant finding a protectible liberty interest. Sealey v. Giltner, 197 F.3d 578, 589-90 (2d Cir. 1999). Accordingly, the Court finds that Plaintiff's 50-day SHU sentence does not suffice to establish a protectible liberty interest.

However, the Court must find that Plaintiff's loss of good time credits does implicate a constitutionally protected liberty

interest, Sandin, 115 S. Ct. at 2302. Nevertheless, any due process claim is precluded by Edwards v. Balisok, 520 U.S. 641 (1997). E.g., Mahotep v. DeLuca, 3 F. Supp.2d 385, 390 (W.D.N.Y. 1998). The United States Supreme Court determined in Edwards that an inmate's § 1983 suit for damages based on due process violations during a prison disciplinary hearing that resulted in loss of good time credits was barred by its prior decision in Heck v. Humphrey, 512 U.S. 477 (1994). In Heck, an inmate had brought a claim for damages resulting from alleged due process violations that occurred during his criminal trial, and the Supreme Court held that it was not cognizable under 42 U.S.C. § 1983 because a "judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." 512 U.S. at 487. The Supreme Court explained that until the inmate's conviction or sentence were invalidated by a habeas corpus petition or other procedural vehicle, no civil action for damages would lie. Id.

In Edwards, the principal procedural defect asserted by the inmate was that the prison hearing officer was deceitful and biased. The Supreme Court found that, if such claim were established, it would necessarily imply the invalidity of the punishment imposed. 117 S.Ct. at 1588. Because the inmate's claims were of a type that would necessarily imply the invalidity of the punishment imposed, and because the "conviction" (i.e., the adverse disciplinary finding) had never been overturned, the Supreme Court

found that the inmate's claim for declaratory relief and money damages was not cognizable under § 1983. 117 S.Ct. at 1589. See also Burnell v. Coughlin, 975 F. Supp. 473, 476-78 (W.D.N.Y. 1997) (discussing Edwards and Heck).

It is clear that Edwards precludes Plaintiff's due process claims in the present case. Plaintiff suggests that the hearing officer, D.S. Greis, was biased and pre-judged his guilt, and that Sgt. Foley and C.O. Rankin lied and forged documents in order to deny Plaintiff his due process rights. Although some of these claims are rather vague, they are of a type which, if true, would necessarily imply the invalidity of Plaintiff's "conviction." Mahotep v. DeLuca, 3 F. Supp.2d at 391 (citing Stone-Bey v. Barnes, 120 F.3d 718, 722 (7th Cir. 1997) (inmate's claim that there was insufficient evidence, and also that there was no written explanation—as "merely a complement to the first" claim—not cognizable under § 1983 because such claims would imply the invalidity of his conviction); Brodie v. Kuhlman, No. 96 CIV. 0328(HB), 1997 WL 411932, at *1 (S.D.N.Y. Jul 23, 1997)(inmate's claims of "due process deprivation and bias" "cannot proceed [under § 1983] absent a finding in another forum that the hearing, and as a consequence the punishment, was invalid"); Cooper v. Bowles, No. CIV. A. 3:91-CV-2622-D, 1997 WL 361879, at *3 (N.D. Tex. June 20, 1997) (inmate's claims that he was denied right to cross-examine witnesses, to present evidence, to call witnesses,

and that the hearing officer predetermined his guilt using fabricated disciplinary reports, barred by Heck/Edwards because if his punishment did result in the deprivation of a liberty interest, his civil rights action necessarily implies the invalidity of the punishment imposed); other citations omitted).

   **D. Deliberate Medical Indifference**

Plaintiff alleges that Dr. Tan failed to treat his dermatological condition (eczema); that Dr. Tan improperly treated the condition; and that N.A. Samuelson maintained a policy of allowing facility doctors to be deliberately indifferent to the serious medical needs of inmates.

Generally, to prevail on an Eighth Amendment claim based on allegedly inappropriate treatment of, or failure to treat, a medical condition, an inmate must show two things: (1) that he had a sufficiently serious medical need; and (2) that the defendant was deliberately indifferent to that serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976); see also Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). "Deliberate indifference" to a prisoner's medical need is demonstrated by proof that prison officials "intentionally den[ied] or delay[ed] access to medical care or intentionally interfer[ed] with the treatment once prescribed." Estelle v. Gamble, 429 U.S. at 104-05.

This deliberate indifference standard embodies both an objective and a subjective prong. Hathaway v. Coughlin, 37 F.3d 63,

-14-

66 (2d Cir. 1994). The objective component–a "sufficiently serious" medical need–"'contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain.'" Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (quoting Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990)). The subjective component–a "[s]ufficiently culpable state of mind"–"requires more than negligence, but less than conduct undertaken for the very purpose of causing harm." Hathaway, 37 F.3d at 66 (citing Farmer v. Brennan, 511 U.S. 825, ___, 114 S. Ct. 1970, 1978, 128 L.Ed.2d 811 (1994)). See also Estelle v. Gamble, 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Here, Plaintiff alleges that Dr. Tan began treating him for his chronic eczema on his hands in July 2009. According to Plaintiff, Dr. Tan knowingly prescribed ineffective medications. This caused his condition to worsen two years later, when the eczema traveled up his arms and caused cuts on his hands.

Under the case law of this Circuit, Plaintiff cannot establish the "serious medical need" component of a deliberate indifference claim based on his eczema. See Sledge v. Kooi, 564 F.3d 105, 107 (2d Cir. 2009) (per curiam) ("Sledge failed to produce sufficient

evidence that any one of the conditions complained of [i.e., eczema, back pain, stomach disorders, allergies, and asthma] qualified as a 'serious medical need.'") (citation omitted), aff'q 2007 WL 951447, at *6 (N.D.N.Y. Feb. 12, 2007). Plaintiff's failure to allege the required objective component is fatal to his Eighth Amendment claim.

With regard to N.A. Samuelson, Plaintiff's allegations regarding her involvement with his eczema treatment and his difficulties with Dr. Tan lack sufficient factual specificity to suggest the requisite level of personal involvement. Moreover, as Plaintiff has no viable underlying Eighth Amendment claim against Dr. Tan, he necessarily has no viable claim against Dr. Tan's supervisor, N.A. Samuelson.

## IV. Conclusion

For all the foregoing reasons, Plaintiff's motion to amend the complaint is granted; Defendant's motion to dismiss is granted; and the amended complaint and first amended complaint are dismissed in their entirety with prejudice. The Clerk of the Court is directed to close the case. The Court hereby certifies that any appeal from this Decision and Order would not be taken in good faith, and therefore denies leave to appeal as a poor person.

**SO ORDERED.**

S/Michael A. Telesca

HONORABLE MICHAEL A. TELESCA
United States District Judge

DATED: November 1, 2013
Rochester, New York